IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge N. Reid Neureiter

Civil Action No. 24-cv-03537-NRN

SHYION JENNINGS,

    Applicant,

v.

WARDEN FCI FLORENCE,

    Respondent.

---

ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

    This matter is before this Court pursuant to the Order of Reference entered April 4, 2025, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge.

    Applicant, Shyion Jennings, is a prisoner in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution at Florence, Colorado ("FCI Florence"). On December 20, 2024, Mr. Jennings filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) (the "Application"). The Court must construe the Application and other papers filed by Mr. Jennings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. After reviewing the record in this case, the Court FINDS and CONCLUDES that the Application should be denied and the case dismissed.

**I. BACKGROUND**

Mr. Jennings claims prison officials are not properly applying time credits under the First Step Act ("FSA") and the Second Chance Act ("SCA"). According to Mr. Jennings, if the time credits were applied properly, he would already be home. As relief he asks the Court to order the BOP to give him all the time credits to which he is entitled and transfer him to home confinement, a halfway house, or supervised release. Mr. Jennings also argues in the Application that administrative remedies are not available and exhaustion would be futile.

On January 6, 2025, while the case was assigned to Magistrate Judge Richard T. Gurley for initial review, Respondent was ordered to file a Preliminary Response limited to addressing the affirmative defense of exhaustion of administrative remedies. On February 10, 2025, Respondent filed a Preliminary Response (ECF No. 13) arguing that the Application should be denied because Mr. Jennings has failed to exhaust the available administrative remedies and has failed to demonstrate exhaustion would be futile.

On March 3, 2025, Mr. Jennings filed a reply (ECF No. 14) to the Preliminary Response. Mr. Jennings alleged in the reply that he was not allowed to have a copy of the Preliminary Response in his possession because it has his case number in it. He further alleged that his reply was based on a brief opportunity he was provided to look over the Preliminary Response for five minutes.

On March 6, 2025, Magistrate Judge Gurley entered an Order Drawing Case (ECF No. 15) and the case was reassigned. Magistrate Judge Gurley declined to

consider the affirmative defense of exhaustion of administrative remedies and directed Respondent to show cause why the Application should not be granted. Magistrate Judge Gurley also directed Respondent to address whether Mr. Jennings is allowed to maintain in his possession a copy of the Preliminary Response and other papers in this action. Finally, Magistrate Judge Gurley stated that Respondent may re-raise the affirmative defense of exhaustion of administrative remedies if appropriate.

On April 3, 2025, Respondent filed a Response to Order to Show Cause (ECF No. 20). Respondent first argues the Application should be dismissed because Mr. Jennings failed to exhaust administrative remedies. Respondent also argues the Application lacks merit even if Mr. Jennings had properly exhausted administrative remedies. Finally, Respondent attaches a sworn Declaration of FCI Florence Warden Derrick Jones stating that Mr. Jennings possesses a copy of the Preliminary Response and other filings in this action, and that he will be able to possess all filings in this action going forward. (*See* ECF No. 20-3 at ¶¶46-47.)

Mr. Jennings has not filed a reply to Respondent's Response to Order to Show Cause despite being given an opportunity to do so. He also has not submitted any filing to dispute Warden Jones' sworn declaration that he possesses a copy of the Preliminary Response and other filings in this action.

## II. DISCUSSION

### A. Exhaustion of Administrative Remedies

The Court first will address the affirmative defense of exhaustion of administrative remedies. Exhaustion of available administrative remedies is a

prerequisite to federal habeas corpus relief pursuant to 28 U.S.C. § 2241. *See Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010). "The burden of showing exhaustion rests on the petitioner in federal habeas corpus actions." *Clonce v. Presley*, 640 F.2d 271, 273 (10th Cir. 1981) (per curiam); *see also Jones v. Davis*, 366 F. App'x 942, 944 (10th Cir. 2010). "A failure to pursue any level of review generally bars a federal court from considering a § 2241 application." *Acosta v. Daniels*, 589 F. App'x 870, 872 (10th Cir. 2014). Stated another way, a prisoner may not exhaust administrative remedies by failing to employ them. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002).

The BOP has adopted a four-step administrative remedy procedure for federal prisoners. *See* 28 C.F.R. §§ 542.10 - 542.19. Under that procedure, a federal prisoner exhausts administrative remedies by first attempting to resolve the matter informally, and then filing an administrative remedy request with institution staff as well as regional and national appeals. *See* 28 C.F.R. §§ 542.13 - 542.15.

Respondent argues that Mr. Jennings has not exhausted the BOP administrative remedy procedure with respect to his claim in this action and Mr. Jennings does not dispute the point. Instead, as noted above, Mr. Jennings argues in the Application that administrative remedies are not available and exhaustion would be futile. Mr. Jennings' entire argument with respect to exhaustion is the following:

> The administrative remedy process is futile and unavailable as FCI Florence is on nonstop lockdown d[ue] to ongoing gang violence. Unit team is always augmented to other post[s] or not available. When unit [team] is available they refuse to give out remed[ies] on any issues concerning FSA. I am well past the time I should have been home and FCI Florence unit teams are not willing to aid in a proactive way to get me home as required by policy and statute. The unit team staff will not respond to my cop out in writing[.] I will verbally get a denial or be

> retaliated against if I press the issue[.] I am scared of unit team[']s reaction for my fight to freedom and I need court intervention.

(ECF No. 1 at p.3 (some capitalization altered).)

The exhaustion requirement may be excused "where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy." *Pinson v. Berkebile*, 601 F. App'x 611, 613 (10th Cir. 2015) (cleaned up). Significantly, "the onus falls on the plaintiff to show that remedies were unavailable to him." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019). The exhaustion also requirement may be waived in limited circumstances when exhaustion would be futile. *See Garza*, 596 F.3d at 1203. Futility exists if administrative relief is "effectively foreclosed." *Goodwin v. State of Oklahoma*, 923 F.2d 156, 158 (10th Cir. 1991). But "conclusory allegations that pursuit of administrative remedies would be futile . . . are insufficient to excuse [a] failure to exhaust." *Mackey v. Ward*, 128 F. App'x 676, 677 (10th Cir. 2005).

Mr. Jennings makes only vague and conclusory assertions in support of his arguments that the exhaustion requirement is unavailable or futile, and those vague and conclusory assertions are not sufficient. *See id.* Furthermore, for the reasons discussed below, Mr. Jennings' arguments lack merit.

First, Mr. Jennings' assertion that FCI-Florence is on nonstop lockdown does not demonstrate administrative remedies are not available or that exhaustion would be futile. Respondent concedes that FCI-Florence intermittently has been on lockdown. However, whether nonstop or intermittent, Respondent has submitted a sworn declaration from Victor Vigil, a Unit Manager at FCI-Florence, stating the administrative remedy program is available to inmates even when the facility is on lockdown. (*See*

5

ECF No. 20-2 at ¶¶ 21-23.) Mr. Jennings does not present any evidence to the contrary.

Second, with respect to the allegation that the unit team is augmented to other posts and not available, and refuses to provide forms for FSA issues when they are available, the record before the Court demonstrates Mr. Jennings has requested and been provided informal remedy request forms on numerous occasions. (*See* Vigil Decl., ECF No. 20-2 at ¶ 25.) Mr. Jennings again presents no evidence to the contrary.

Third, with respect to the assertion that unit staff will not respond in writing, Mr. Jennings fails to cite any authority that requires a written response to an informal remedy request. It is true that a written response is required for formal administrative remedy requests and appeals, but the BOP Administrative Remedy Program allows an inmate to proceed to the next step if he does not receive a response within the time allowed for reply. *See* 28 C.F.R. § 542.18.

Fourth, Mr. Jennings' assertion that he is well past the time he should have been released does not demonstrate administrative remedies are not available or that exhaustion would be futile. "[I]f failure to exhaust could always be excused because a prisoner alleges he is entitled to immediate release, the requirement of exhaustion would fail of its real purpose." *Gallardo v. Rios*, No. 18-cv-293 (ECT/HB), 2019 WL 3225771, at *3 (D. Minn. Feb. 1, 2019); *see also Olsen v. Hudson*, No. 23-3083-JWL, 2023 WL 4054952, at *1 (D. Kan. May 9, 2023) ("This Court has held, however, that the futility exception is not satisfied merely because exhaustion could not be completed by the release date that would apply if petitioner received the credits he claimed."); *Rosenberg v. Pliler*, No. 21-CV-5321 (VEC), 2021 WL 6014938, at *4 (S.D.N.Y. Dec.

20, 2021) ("But Rosenberg's claim that he is entitled to immediate release alone does not excuse him from exhausting his administrative remedies.").

Finally, Mr. Jennings' assertion about retaliation lacks merit because he does not allege specific facts that demonstrate "(1) the threat, machination, or intimidation actually did deter him from lodging a grievance and (2) the threat, machination, or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." *May*, 929 F.3d at 1235 (cleaned up). In particular, Mr. Jennings does not allege that he actually attempted to exhaust the BOP administrative remedy procedure and he does not identify any specific threat, machination, or intimidation from prison officials.

In summary, the record before the Court does not establish that Mr. Jennings has completed the BOP administrative remedy procedure with respect to the claim he is asserting in this action, and he fails to demonstrate the administrative remedy procedure is not available or that exhaustion would be futile. Instead, Mr. Jennings seeks to circumvent the exhaustion requirement. But, as noted above, a prisoner may not exhaust "administrative remedies by, in essence, failing to employ them." *Jernigan*, 304 F.3d at 1033. Therefore, the Application will be denied for failure to exhaust administrative remedies.

**B. First Step Act**

The Court next will address Mr. Jennings's claim as it relates to time credits under the FSA. The specific claim Mr. Jennings is asserting with respect to time credits under the FSA is not entirely clear because he makes only vague and conclusory

allegations that "unit teams are not properly applying (FSA) time credits" and the "unit team has . . . refuse[d] to apply my FSA [time credits because] my reci[d]ivism is to[o] high." (ECF No. 1 at p.2.) Mr. Jennings also asserts without any discussion that, under "subsection 3624(c)[, the] BOP 'shall' place elig[i]ble inmates in prerelease custody or supervised release." (*Id.*)

The FSA provides in relevant part that an eligible prisoner "who successfully completes evidence-based recidivism reduction ["EBRR"] programming or productive activities, shall earn time credits" that "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(A), (C). To administer time credits under the FSA, the BOP must determine each inmate's risk of recidivism and categorize the risk as minimum, low, medium, or high; assess and determine each inmate's risk of violent or serious misconduct; determine the type and amount of EBRR programming that is appropriate for each inmate; periodically reassess each inmate's risk of recidivism and reassign the inmate to appropriate EBRR programs and productive activities based on the reassessment; determine when to provide incentives and rewards for successful participation in EBRR programs and productive activities; and determine when the inmate is ready for transfer to pre-release custody or supervised release. *See* 18 U.S.C. § 3632(a)(1) - (7).

An eligible inmate "shall earn 10 days of time credits for every 30 days of successful participation in [EBBR] programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). An inmate "shall earn an additional 5 days of time credits for every 30 days of successful participation in [EBRR] programming or productive activities" if the

BOP determines the inmate is "at a minimum or low risk for recidivating" and "has not increased their risk of recidivism" over "2 consecutive assessments." 18 U.S.C. § 3632(d)(4)(A)(ii). FSA time credits may be applied to additional time in prerelease custody or placement on supervised release. *See* 18 U.S.C. § 3632(d)(4)(C).

Application of earned FSA time credits is not automatic. Among other things, the inmate must have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction or ha[ve] maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment." 18 U.S.C. § 3624(g)(1)(B). The BOP uses the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") to categorize each inmate's risk of recidivism. (*See* Jones Decl., ECF No. 20-3 at ¶ 4.) Inmates with high or medium PATTERN scores also may petition the warden to have their time credits applied. *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II). Such a petition must show (1) the inmate would not be a danger to society if transferred to prerelease custody or supervised release; (2) the inmate has made a good faith effort to lower their recidivism risk level; and (3) the inmate is unlikely to recidivate. *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II).

According to Respondent, Mr. Jennings has earned 200 days of FSA time credits that could be applied to his release on supervised release, but those time credits are not being applied because he remains at a high risk of recidivism. (*See* Jones Decl., ECF No. 20-3 at ¶¶ 35-36.) Furthermore, although Mr. Jennings petitioned the warden to have the time credits applied, that petition was denied. (*See* Jones Decl., ECF No. 20-3 at ¶¶ 37-42.)

Mr. Jennings fails to present any reasoned argument that his rights were violated in any way with respect to his time credits under the FSA. Therefore, Mr. Jennings' FSA claim also should be dismissed for that reason.

**C. Second Chance Act**

The Court next will address the issue of time credits under the SCA. Mr. Jennings alleges the BOP is not properly applying credits under the SCA, although he does not identify specifically how the BOP allegedly is not properly applying credits under the SCA.

The SCA expanded the eligibility time frame for inmate placement in a Residential Reentry Center ("RRC") to twelve months. *See Garza*, 596 F.3d at 1202. However, the SCA does not guarantee an inmate will be placed in an RRC for twelve months. *See Walker v. Sanders*, No. CV 09-1322-GAF(E), 2009 WL 2448023, at *5 (C.D. Cal. Aug. 10, 2009) ("Nothing in the statute, the regulations or the BOP's memoranda mandate any particular duration of that RRC placement. The duration of RRC placement is a matter as to which the BOP retains discretionary authority."), *aff'd*, 385 F. App'x 747 (9th Cir. 2010). Instead, the BOP is required only to conduct a five-factor review to determine the timing of placement in an RRC. *See* 18 U.S.C. § 3621(b).

Respondent has submitted evidence that the required five-factor review was completed on January 8, 2025, and it was determined that Mr. Jennings is eligible to be placed in an RRC for 121-150 days prior to his release date on April 7, 2026. (*See* Jones Decl., ECF No. 20-3 at ¶ 45.)[1] Mr. Jennings fails to demonstrate his rights were

---

[1] Warden Jones also states the BOP issued new guidance on April 1, 2025, that

violated in any way with respect to this review. Therefore, Mr. Jennings' SCA claim also should be dismissed for that reason.

## III. CONCLUSION

In summary, the Court finds that Mr. Jennings is not entitled to relief in this habeas corpus action and the Application will be denied. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) is denied and this case is dismissed without prejudice for failure to exhaust administrative remedies.

DATED June 6, 2025.

**BY THE COURT**:

N. Reid Neureiter
United States Magistrate Judge

---

reduced referral to an RRC under the Second Chance Act to sixty days, which will reduce Mr. Jennings' target transfer date to sixty days prior to his release. The BOP's new guidance is not at issue in this action.